IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| **Linda Hoekman**, on behalf of herself and all others similarly situated; **Deborah York**, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**Education Minnesota**; **Anoka Hennepin Education Minnesota**, as representative of the class of all chapters and affiliates of Education Minnesota; **National Education Association**; **American Federation of Teachers**; **Anoka Hennepin School District**, as representative of the class of all school districts in Minnesota; **Mark Dayton**, in his official capacity as governor of Minnesota; **Lori Swanson**, in her official capacity as Attorney General of Minnesota; **Todd L. Doncavage**, in his official capacity as Commissioner of the Minnesota Bureau of Mediation Service,<br><br>Defendants. | Case No. _____<br><br><br><br>**Plaintiffs' Class-Action Complaint** |

Linda Hoekman and Deborah York are current or former public-school teachers who bring this class action on behalf of themselves and all others similarly situated, seeking redress for the defendants' past and ongoing violations of their constitutionally protected rights. The defendants have violated the class members' constitutional rights by forcing them to work in an "agency shop," where non-union members are compelled to pay compulsory "fair-share fees" to Education Minnesota or its affiliates as a condition of their employment.

The representative plaintiffs sue on behalf two separate classes. The first class consists of "fair-share fee payers." These are employees who refuse to join Education Minnesota or its affiliates but are compelled to pay "fair-share fees" to the union as a condition of their employment. *See* Minn. Stat. § 179A.06(3) (attached as Exhibit 1). Ms. Hoekman is a "fair-share fee payer" who refuses to join Education Minnesota or its affiliates but is nonetheless compelled to remit money to the union. Ms. Hoekman sues as class representative for all current and former fair-share fee payers to Education Minnesota or its affiliates.

The second class consists of union members who would have quit Education Minnesota had they not been compelled to work in an unconstitutional agency shop. Ms. York, for example, chose to remain a member of the union even though she opposes Education Minnesota's collective-bargaining activities and its political and ideological advocacy, because resigning her membership would have saved very little money and would not have been worth the cost of losing her vote and whatever little influence she might have in collective-bargaining matters. Ms. York seeks classwide relief on behalf of all Education Minnesota members who retained their membership only because they would have been forced to pay "fair-share fees" had they quit, and she seeks restitution for each class member in the amount of the "fair-share fees" that they were forced to pay regardless of whether they retained or resigned their union membership.

## JURISDICTION AND VENUE

1.  The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367.

2.  Venue is proper because a substantial part of the events giving rise to the claims occurred in the district of Minnesota. *See* 28 U.S.C. § 1391(b)(2).

3. Because the claims related to Ms. Hoekman arose in Anoka and Hennepin Counties and Ms. Hoekman resides in Anoka County, and because the claims related to Ms. York arose in Anoka and Hennepin Counties and Ms. York resides in Hennepin County, assignment to the Fourth Division is proper.

## PARTIES

4. Plaintiff Linda Hoekman resides in Anoka County, Minnesota.

5. Plaintiff Deborah York resides in Hennepin County, Minnesota.

6. Defendant Education Minnesota is a labor union whose headquarters are located at 41 Sherburne Avenue, St. Paul, Minnesota 55103-2196.

7. Defendant Anoka Hennepin Education Minnesota is a local union chapter affiliated with Education Minnesota. Its offices are located in Hennepin County at 3200 Main Street NW, Suite 360, Minneapolis, Minnesota 55448-8408. It is sued as representative of the class of all chapters and affiliates of Education Minnesota.

8. Defendant National Education Association (NEA) is a labor union whose headquarters are located at 1201 16th Street NW, Washington, D.C. The NEA is affiliated with the MSEA.

9. Defendant American Federation of Teachers (AFT) is a labor union whose headquarters are located at 555 New Jersey Avenue NW, Washington, DC 20001. The AFT is affiliated with the MSEA.

10. Defendant Anoka Hennepin School District is a school district that covers both Anoka County and Hennepin County, Minnesota. Its offices are located at 2727 North Ferry Street, Anoka, Minnesota 55303. It is sued as representative of the class of all school districts in Minnesota.

11. Defendant Mark Dayton is the governor of Minnesota. His office is in St. Paul, Minnesota. Governor Dayton is the representative of the State and he is sued in his official capacity.

12. Defendant Lori Swanson is the Attorney General of Minnesota. Her offices are in St. Paul, Minnesota. She is charged with enforcing the state's laws, including the Public Employment Labor Relations Act, and she is sued in her official capacity.

13. Defendant Todd L. Doncavage is Commissioner of the Minnesota Bureau of Mediation Service. He is charged with ruling upon challenges to "fair-share fees" that non-union public employees must pay under Minn. Stat. § 179A.06(3). He is sued in his official capacity.

## STATEMENT OF THE CLAIMS

14. Ms. Hoekman is a public-school teacher who has worked for the Anoka Hennepin School District since 1997. She currently teaches at Champlin Park High School in Hennepin County.

15. Although Ms. Hoekman was a union member early in her career, she eventually resigned her union membership because she disapproves of Education Minnesota's political advocacy and collective-bargaining activities, as well as the excessive salaries that it pays to even low-ranking union officials.

16. Even though Ms. Hoekman is not a member of Education Minnesota or its affiliates, she is compelled to pay "fair-share fees" to Education Minnesota as a condition of her employment.

17. Ms. Hoekman does not want to pay these "fair-share fees" because she disapproves of Education Minnesota's activities and does not want to subsidize them in any way. The compelled subsidy that Ms. Hoekman and her fellow fair-share-fee payers must remit to Education Minnesota and its affiliates as a condition of their employment violates their constitutional rights.

18. The law of Minnesota authorizes Education Minnesota and its affiliates to extract money from non-union members as a condition of their employment. *See* Minn. Stat. § 179A.06(3) (attached to the complaint as Exhibit 1). Section

179A.06(3) is unconstitutional because it allows public-employee unions to take "fair-share fees" from nonmembers as a condition of their employment and without securing the employee's affirmative, written, and freely given consent.

19. Education Minnesota and its affiliates are acting under color of state law by collecting these "fair-share fees" from Ms. Hoekman and her fellow class members. *See* Minn. Stat. § 179A.06(3).

20. Education Minnesota and its affiliates have committed the torts of conversion and trespass to chattels by appropriating money from agency-fee payers without securing their affirmative, written, and freely given consent, and they are liable in tort and in an action for replevin. Education Minnesota cannot defend its tortious conduct by relying on Minn. Stat. § 179A.06(3), because the statute is unconstitutional and unconstitutional statutes cannot confer immunity on tortious conduct.

21. Ms. York is a retired public-school teacher who worked for the Spring Lake Park and Edina School Districts full-time. During this time, she remained a member of her local union, an affiliate of Education Minnesota.

22. Ms. York opposed and continues to oppose Education Minnesota's political advocacy and collective-bargaining activities. Nevertheless, she chose to remain in the union because she would have been forced to continue paying "fair-share fees" had she resigned, and the difference in money between the full membership dues and the "fair-share fees" would not have been worth the loss of her vote and whatever little influence she might have been able to assert in collective-bargaining matters.

23. The compelled subsidy that Ms. York and her fellow school employees were forced to pay to Education Minnesota as a condition of their employment violates their constitutional rights—regardless of whether they chose to remain in the union (as Ms. York did) or resign their membership (as Ms. Hoekman has done).

24. The law of Minnesota authorizes Education Minnesota and its affiliates to compel union payments from school employees regardless of whether they remain in

the union or resign their membership. *See* Minn. Stat. § 179A.06(3) (attached to the complaint as Exhibit 1). Section 179A.06(3) is unconstitutional because it compels union payments from employees who remain in the union but would quit if they could do so without being subjected to "fair-share fees."

25. Education Minnesota and its affiliates are acting under color of state law by imposing these mandatory union payments on school employees, which compels every employee to pay at least the amount imposed in "fair-share fees"—even if the employee would prefer to resign his union membership and withdraw all financial support of the union. *See* Minn. Stat. § 179A.06(3).

26. Education Minnesota and its affiliates have committed the torts of conversion and trespass to chattels by confiscating money belonging to Ms. York against her will, and denying her prerogative to resign and cease providing financial support to her union. Education Minnesota and its affiliates are therefore liable to Ms. York in tort and in an action for replevin. Education Minnesota and its affiliates cannot defend their tortious behavior by relying on Minn. Stat. § 179A.06(3), because the statute is unconstitutional and unconstitutional statutes cannot confer immunity on tortious conduct.

## CLASS ALLEGATIONS—AGENCY-FEE PAYERS

27. Ms. Hoekman brings a class action under Fed. R. Civ. P. 23(b)(1)(A), (b)(1)(B), and (b)(3). The class includes all individuals who: (1) are or were employed by the State of Minnesota or any of its subunits, including any school district in the State; (2) are or were nonmembers of Education Minnesota who were compelled by Education Minnesota or its affiliates to pay "agency fees" or "fair-share fees"—regardless of whether those fees were remitted to the union, its affiliates, or a third-party organization. The class includes everyone who has ever fallen within this definition, including current, former, or retired teachers or teachers who have moved to other

States, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

28. The number of persons in the class makes joinder of the individual class members impractical.

29. There are questions of fact and law common to all class members. Factually, all class members are public employees and union nonmembers who have been forced to pay "fair-share fees" to Education Minnesota as a condition of their employment. Legally, the U.S. Constitution and Minnesota tort law afford the same rights to every member of the class.

30. Ms. Hoekman's claims are typical of other class members, as each class member has objected to union membership yet was subject to "fair-share fees" despite their refusal to join Education Minnesota or its affiliates.

31. Ms. Hoekman adequately represents the interests of their fellow class members, and she has no interests antagonistic to the class.

32. A class action can be maintained under Rule 23(b)(1)(A) because separate actions by class members could risk inconsistent adjudications on the underlying legal issues.

33. A class action can be maintained under Rule 23(b)(1)(B) because an adjudication determining the constitutionality of compulsory "fair-share fees" will, as a practical matter, be dispositive of the interests of all class members.

34. A class action can be maintained under Rule 23(b)(3) because the common questions of law and fact identified in the complaint predominate over any questions affecting only individual class members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other things, all class members are subjected to the same violation of their constitutional rights, but the amount of money involved in each individual's claim would make it burdensome for class members to maintain separate actions.

## CLASS ALLEGATIONS—UNION MEMBERS

35. Ms. York seeks to represent a separate class of union members who would have quit the union but chose to remain because they would have been compelled to pay "fair-share fees" had they resigned. This class includes all individuals who: (1) are or were employed by the State of Minnesota or any of its subunits, including any school district in the State; (2) are or were members of Education Minnesota who would have quit the union had they not been forced to work in an unconstitutional agency shop. The class includes everyone who has ever fallen within this definition, including former or retired teachers or teachers who have moved to other States, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

36. The number of persons in the class makes joinder of the individual class members impractical.

37. There are questions of fact and law common to all class members. Factually, all class members are reluctant union nonmembers who remained in Education Minnesota only because they would have been forced to pay "fair-share fees" had they quit. Legally, the U.S. Constitution and Minnesota tort law afford the same rights and remedies to every member of the class.

38. Ms. York's claims are typical of other class members, as each class member opposes Education Minnesota yet chose to remain in the union on account of the unconstitutional agency-shop arrangement.

39. Ms. York adequately represents the interests of her fellow class members, and she has no interests antagonistic to the class.

40. A class action can be maintained under Rule 23(b)(1)(A) because separate actions by class members could risk inconsistent adjudications on the underlying legal issues.

41. A class action can be maintained under Rule 23(b)(1)(B) because an adjudication determining the constitutionality of compulsory "fair-share fees" and the appropriate remedy for reluctant union members such as Ms. York will, as a practical matter, be dispositive of the interests of all class members.

42. A class action can be maintained under Rule 23(b)(3) because the common questions of law and fact identified in the complaint predominate over any questions affecting only individual class members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other things, all class members are subjected to the same violation of their constitutional rights, but the amount of money involved in each individual's claim would make it burdensome for class members to maintain separate actions.

## CAUSES OF ACTION

43. Each of the representative plaintiffs is suing Education Minnesota and its chapters and affiliates, the school districts, Governor Dayton, Attorney General Swanson, and Commissioner Doncavage under 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, each of which supplies a cause of action for the individual and class-wide relief that they are requesting.

44. Each of the representative plaintiffs is also suing Education Minnesota and its chapters and affiliates under the state-law torts of conversion, trespass to chattels, replevin, and any other state-law cause of action that offers relief for this unlawful seizure of their personal property. The representative plaintiffs invoke the supplemental jurisdiction of this court over these pendent state-law claims. *See* 28 U.S.C. § 1367.

## DEMAND FOR RELIEF

45. Ms. Hoekman and Ms. York respectfully request that the court:

a. certify a class of all nonunion members who have been forced to pay "fair-share fees" to Education Minnesota or its affiliates as a condition of their employment;

b. certify a separate class of Education Minnesota members (or members of its affiliates) who would have resigned their membership had they not been forced to work in an unconstitutional agency shop that would have subjected them to "fair-share fees" after quitting their union membership;

c. declare that Ms. Hoekman, Ms. York, their fellow class members have a constitutional right to decline to join or financially support a public-employee union, and that they cannot be forced to pay money to a public-employee union as a condition of their employment;

d. declare that state tort law protects the right of Ms. Hoekman, Ms. York, and their fellow class members not to have their wages garnished or redirected by Education Minnesota without their affirmative, written, and freely given consent, and that any federal or state law or collective-bargaining agreement that purports to override these protections of state tort law by allowing Education Minnesota to help itself to the wages and paychecks of school employees—or that compels school employees to consent the garnishment of their wages by Education Minnesota as a condition of their employment—is unconstitutional and without legal effect;

e. declare Minn. Stat. § 179A.06(3) unconstitutional because it allows public-employee unions to extract "fair-share fees" from nonmembers as a condition of their employment, and permanently enjoin Governor Dayton, Attorney General Swanson, Commissioner Doncavage,

      the school districts, and all of their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing Minn. Stat. § 179A.06(3), or any other provision of state law that authorizes or enforces public-employee union shops;

f.   declare that all collective-bargaining agreements that compel the representative plaintiffs and their fellow class members to pay "fair-share fees" to Education Minnesota or its affiliates as a condition of their employment violate the constitutional rights of Ms. Hoekman, Ms. York, and their fellow class members;

g.   order Education Minnesota and its affiliates, including the NEA and the AFT, to refund all "fair-share fees" that they unconstitutionally extracted from Ms. Hoekman and her fellow agency-fee class members;

h.   order Education Minnesota and its affiliates to provide a refund to every union member in the class represented by Ms. York in an amount equal to the "fair-share fees" that the class members were forced to pay regardless of whether they retained or resigned their union membership;

i.   permanently enjoin Education Minnesota and its affiliates, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with it, from taking or redirecting any type of money from Ms. Hoekman, Ms. York, their fellow class members, or any other public employee as a condition of their employment and without first obtaining the employee's affirmative, written, and freely given consent;

j. permanently enjoin the Anoka Hennepin School District, along with every school district in the State, from deducting "fair-share fees" from the paychecks of non-union members;

k. permanently enjoin the Anoka Hennepin School District, along with every school district in the State, from entering into any collective-bargaining agreement that allows a public-employee union to collect or redirect any type of money from a non-union member;

l. permanently enjoin the Anoka Hennepin School District, along with every school district in the State, from entering into any collective-bargaining agreement that allows a public-employee union to collect or redirect any type of money from any school employee without first securing the employee's affirmative, written, and freely given consent;

m. permanently enjoin all of the defendants, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing any provision of Minnesota law, or any provision of a collective-bargaining agreement, that requires any payment of money as a consequence for exercising one's constitutional right not to join or financially support a public-employee union;

n. order Education Minnesota, its affiliates and chapters, the Anoka Hennepin School District, and every school district in the State to immediately honor and enforce a public employee's decision to withdraw his membership or financial support of a public-employee union, regardless of the time of year that the decision is made;

o. award costs and attorneys' fees under 42 U.S.C. § 1988;

p. grant all other relief that the Court may deem just, proper, or equitable.

<div style="display: flex;">
<div>

Jonathan F. Mitchell*
TX Bar No. 24075463
Mitchell Law PLLC
106 East Sixth Street, Suite 900
Austin, Texas 78701
(512) 686-3940
jonathan@mitchell.law

\* *pro hac vice* application
  forthcoming

Dated: June 18, 2018

</div>
<div>

Respectfully submitted.

 /s/ Douglas P. Seaton
Douglas P. Seaton
MN Bar No. 127759
Seaton, Peters & Revnew, P.A.
7300 Metro Boulevard, Suite 500
Minneapolis, Minnesota 55439
(952) 921-4604
dseaton@seatonlaw.com

*Counsel for Plaintiffs and
the Proposed Class*

</div>
</div>