UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| **Linda Hoekman**, **Debra J. Aune**, **Paul Hanson**, and **Carolyn Workman**, on behalf of themselves and others similarly situated; **Aaron Benner**, **Mary Dee Buros**, **Stephen Severance**, **Andrew Unseth**, and **Deborah York**, on behalf of themselves and others similarly situated; **Mary Dee Buros**, on behalf of herself and others similarly situated, | Case No. 0:18-cv-01686-SRN-SER |
| Plaintiffs, | **Plaintiffs' First Amended Class-Action Complaint** |
| v. | |
| **Education Minnesota**; **Anoka Hennepin Education Minnesota** and **Shakopee Education Association**, as representatives of the class of all chapters and affiliates of Education Minnesota; **National Education Association**; **American Federation of Teachers**, | |
| Defendants. | |

Linda Hoekman, Debra J. Aune, Paul Hanson, Carolyn Workman, Aaron Benner, Mary Dee Buros, Stephen Severance, Andrew Unseth, and Deborah York are current or former public-school teachers who bring this class action on behalf of themselves and others similarly situated, seeking redress for the defendants' past and ongoing violations of their constitutionally protected rights. The defendants have violated the class members' constitutional rights by forcing them to work in an "agency shop," where non-union members are compelled to pay compulsory "fair-share fees" to Education Minnesota or its affiliates as a condition of their employment.

The representative plaintiffs sue on behalf three separate classes. The first class consists of "fair-share fee payers." These are employees who refused to join Education Minnesota or its affiliates but were compelled to pay "fair-share fees" to the union as a condition of their employment. *See* Minn. Stat. § 179A.06(3) (attached as Exhibit 1). Ms. Hoekman, Ms. Aune, Mr. Hanson, and Ms. Workman were "fair-share fee payers" who refused to join Education Minnesota or its affiliates but were nonetheless compelled to remit money to the union. Ms. Hoekman, Ms. Aune, Mr. Hanson, and Ms. Workman sue as class representatives for all current and former fair-share fee payers to Education Minnesota or its affiliates.

The second class consists of union members or former union members who would have quit Education Minnesota or its affiliates had they not been compelled to work in an unconstitutional agency shop. Mr. Benner, Ms. Buros, Mr. Severance, Mr. Unseth, and Ms. York all chose to remain members of the union even though they opposed Education Minnesota's collective-bargaining activities and its political and ideological advocacy, because resigning their membership would have saved very little money and would not have been worth the cost of losing their vote and whatever little influence they might have in collective-bargaining matters. Mr. Benner, Ms. Buros, Mr. Severance, Mr. Unseth, and Ms. York seek classwide relief on behalf of all Education Minnesota members who retained their membership only because they would have been forced to pay "fair-share fees" had they quit, and they seek restitution for each class member in the amount of the "fair-share fees" that they were forced to pay regardless of whether they retained or resigned their union membership.

The third class consists of former members of Education Minnesota or its affiliates who have sought to terminate union-related payroll deductions in the wake of *Janus*—but who have been thwarted from doing so by the union or by their employer. On August 3, 2018, Ms. Buros e-mailed her local union President and her school

district's payroll office and informed them that she was resigning her union membership. *See* Exhibit 2. Nevertheless, the union *continued* to take membership dues from Ms. Buros's paycheck—even though Ms. Buros is no longer a member of the union—because it insists that Ms. Buros cannot halt the payment of union dues unless she submits "written notice" to her employer and local union during a seven-day "opt-out window" that runs from September 24, 2018, through September 30, 2018. *See* Exhibit 4. Ms. Buros seeks classwide relief for all employees who remained subject to union-related payroll deductions after resigning from the union, and she seeks damages and injunctive relief on behalf of this class.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367.

2. Venue is proper because a substantial part of the events giving rise to the claims occurred in the district of Minnesota. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

3. Plaintiff Linda Hoekman resides in Anoka County, Minnesota.

4. Plaintiff Debra J. Aune resides in Marshal County, Minnesota.

5. Plaintiff Paul Hanson resides in Anoka County, Minnesota.

6. Plaintiff Carolyn Workman resides in Carver County, Minnesota.

7. Plaintiff Aaron Benner resides in Ramsey County, Minnesota.

8. Plaintiff Mary Dee Buros resides in Scott County, Minnesota.

9. Plaintiff Stephen Severance resides in Ramsey County, Minnesota.

10. Plaintiff Andrew Unseth resides in Scott County, Minnesota.

11. Plaintiff Deborah York resides in Hennepin County, Minnesota.

12. Defendant Education Minnesota is a labor union whose headquarters are located at 41 Sherburne Avenue, St. Paul, Minnesota 55103-2196.

13. Defendant Anoka Hennepin Education Minnesota is a local union chapter affiliated with Education Minnesota. Its offices are located in Hennepin County at 3200 Main Street NW, Suite 360, Minneapolis, Minnesota 55448-8408. It is sued, along with the Shakopee Education Association, as representative of the class of all chapters and affiliates of Education Minnesota.

14. Defendant Shakopee Education Association is a local union chapter affiliated with Education Minnesota. Its offices are located at 505 Holmes Street South, Shakopee, Minnesota 55379. It is sued, along with Anoka Hennepin Education Minnesota, as representative of the class of all chapters and affiliates of Education Minnesota.

15. Defendant National Education Association (NEA) is a labor union whose headquarters are located at 1201 16th Street NW, Washington, D.C. The NEA is affiliated with Education Minnesota.

16. Defendant American Federation of Teachers (AFT) is a labor union whose headquarters are located at 555 New Jersey Avenue NW, Washington, DC 20001. The AFT is affiliated with Education Minnesota.

**STATEMENT OF THE CLAIM—FAIR-SHARE FEE PAYERS**

17. Ms. Hoekman is a public-school teacher who has worked for the Anoka Hennepin School District since 1997. She currently teaches at Champlin Park High School in Hennepin County.

18. Ms. Aune is a public-school teacher who works for the Greenbush–Middle River School District 2683.

19. Mr. Hanson is a public-school teacher who works for the Centennial School District 12.

20. Ms. Workman is a public-school teacher who works for the Burnsville–Eagan–Savage School District 191.

21. Although Ms. Hoekman was a union member early in her career, she eventually resigned her union membership because she disapproves of Education Minnesota's political advocacy and collective-bargaining activities, as well as the excessive salaries that it pays to even low-ranking union officials. Ms. Aune, Mr. Hanson, and Ms. Workman have refused to join the union for similar reasons.

22. Even though Ms. Hoekman, Ms. Aune, Mr. Hanson, and Ms. Workman were not members of Education Minnesota or its affiliates, they were compelled to pay "fair-share fees" to the union as a condition of their employment.

23. The compelled subsidy that Ms. Hoekman, Ms. Aune, Mr. Hanson, Ms. Workman were required to pay to Education Minnesota and its affiliates violated their constitutional rights. *See Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018).

24. The law of Minnesota authorizes Education Minnesota and its affiliates to extract money from non-union members as a condition of their employment. *See* Minn. Stat. § 179A.06(3) (attached to the complaint as Exhibit 1). Section 179A.06(3) is unconstitutional because it allows public-employee unions to take "fair-share fees" from nonmembers as a condition of their employment and without securing the employee's affirmative, written, and freely given consent.

25. Education Minnesota and its affiliates were acting under color of state law by collecting these "fair-share fees" from Ms. Hoekman, Ms. Aune, Mr. Hanson, Ms. Workman, and their fellow fair-share-fee payers. *See* Minn. Stat. § 179A.06(3); *Lugar v. Edmondson Oil Co. Inc.*, 457 U.S. 922 (1982).

26. Education Minnesota and its affiliates have committed the torts of conversion and trespass to chattels by appropriating money from fair-share-fee payers without securing their affirmative, written, and freely given consent, and they are liable in tort and in an action for replevin. Education Minnesota cannot defend its tortious conduct by relying on Minn. Stat. § 179A.06(3), because the statute is unconstitutional and unconstitutional statutes cannot confer immunity on tortious conduct.

27. Ms. Hoekman, Ms. Aune, Mr. Hanson, and Ms. Workman are suing on behalf of a class of all non-union members who were compelled to pay "fair-share fees" to Education Minnesota or its affiliates as a condition of their employment—regardless of whether those fees were remitted to the union, its affiliates, or a third-party organization. The class includes everyone who has ever fallen within this definition, including current, former, or retired teachers or teachers who have moved to other States, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

28. Ms. Hoekman, Ms. Aune, Mr. Hanson, and Ms. Workman have Article III standing to bring these claims. They have suffered injury in fact because they were forced to pay money to Education Minnesota and its affiliates as a condition of their employment. The injury was caused by the unconstitutional behavior of the defendants, and the injury will be redressed by a refund of the money that the union unconstitutionally extracted from the plaintiffs and their fellow class members.

**STATEMENT OF THE CLAIM—UNWILLING UNION MEMBERS**

29. Mr. Benner is a public-school teacher who worked for the St. Paul School District from 1995–1999 and from 2007–2015. During this time, he remained a member of the Saint Paul Federation of Teachers, an affiliate of Education Minnesota.

30. Ms. Buros is a public-school teacher who works for the Shakopee Public Schools. She remained a member of the Shakopee Education Association, an affiliate of Education Minnesota, until the Supreme Court's ruling in *Janus*, and she resigned her union membership on August 3, 2018.

31. Mr. Severance taught at the St. Paul Public Schools from 1980–2014. During this time, he remained a member of the Saint Paul Federation of Teachers, an affiliate of Education Minnesota.

32. Mr. Unseth is a public-school teacher who worked for the Northfield Public Schools until 2015. During that time, he remained a member of the Northfield Education Association, an affiliate of Education Minnesota.

33. Ms. York is a retired public-school teacher who worked for the Spring Lake Park and Edina School Districts. During this time, she remained a member of her local union, an affiliate of Education Minnesota.

34. Mr. Benner, Ms. Buros, Mr. Severance, Mr. Unseth, and Ms. York opposed and continue to oppose Education Minnesota's political advocacy and collective-bargaining activities. Nevertheless, they chose to remain in the union because they would have been forced to continue paying "fair-share fees" had they resigned, and the difference in money between the full membership dues and the "fair-share fees" would not have been worth the loss of their vote and whatever little influence they might have been able to assert in collective-bargaining matters.

35. The compelled subsidy that Mr. Benner, Ms. Buros, Mr. Severance, Mr. Unseth, Ms. York, and their fellow school employees were forced to pay to Education Minnesota as a condition of their employment violated their constitutional rights—regardless of whether they chose to remain in the union (as Mr. Benner, Ms. Buros, Mr. Severance, Mr. Unseth, and Ms. York did) or resign their membership (as Ms. Hoekman, Ms. Aune, Mr. Hanson, and Ms. Workman did).

36. The law of Minnesota authorizes Education Minnesota and its affiliates to compel union payments from school employees regardless of whether they remain in the union or resign their membership. *See* Minn. Stat. § 179A.06(3) (attached to the complaint as Exhibit 1). Section 179A.06(3) is unconstitutional because it compels union payments from employees who remain in the union but would quit if they could do so without being subjected to "fair-share fees."

37. Education Minnesota and its affiliates were acting under color of state law by imposing these mandatory union payments on school employees, which compelled

every employee to pay at least the amount imposed in "fair-share fees"—even if the employee would have preferred to resign his union membership and withdraw all financial support of the union. *See* Minn. Stat. § 179A.06(3); *Lugar v. Edmondson Oil Co. Inc.*, 457 U.S. 922 (1982).

38. Education Minnesota and its affiliates have committed the torts of conversion and trespass to chattels by taking money from Mr. Benner, Ms. Buros, Mr. Severance, Mr. Unseth, and Ms. York against their will, and denying their prerogative to resign and cease providing financial support to her union. Education Minnesota and its affiliates are therefore liable to Mr. Benner, Ms. Buros, Mr. Severance, Mr. Unseth, and Ms. York in tort and in an action for replevin. Education Minnesota and its affiliates cannot defend their tortious behavior by relying on Minn. Stat. § 179A.06(3), because the statute is unconstitutional and unconstitutional statutes cannot confer immunity on tortious conduct.

39. Mr. Benner, Ms. Buros, Mr. Severance, Mr. Unseth, and Ms. York are suing on behalf of a class of all members or former members of Education Minnesota or its affiliates who would have quit the union had they not been forced to work in an unconstitutional agency shop. The class includes everyone who has ever fallen within this definition, including former or retired teachers or teachers who have moved to other States, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

40. Mr. Benner, Ms. Buros, Mr. Severance, Mr. Unseth, and Ms. York have Article III standing to bring these claims. They have suffered injury in fact because they were forced to pay money to Education Minnesota and its affiliates as a condition of their employment. The injury was caused by the unconstitutional behavior of the defendants, and the injury will be redressed by a refund of the money that the union unconstitutionally extracted from the plaintiffs and their fellow class members.

## STATEMENT OF THE CLAIM—UNCONSTITUTIONAL GARNISHMENT OF WAGES POST-*JANUS*

41. After the Supreme Court's ruling in *Janus*, Ms. Buros resigned her union membership and demanded a halt to all union-related payroll deductions.

42. On August 3, 2018, Ms. Buros sent an e-mail to Dale Anderson, the President of the Shakopee Education Association, and Michael Greeley, a payroll specialist at the Shakopee Public Schools, which read as follows:

> Good morning Dale and Mike,
>
> I'm sending this to let you know that I've made the decision to discontinue my union membership. I am resigning my membership in Education and all of its affiliates, including Shakopee Education Association and the National Education Association, effectively immediately.

*See* Exhibit 2.

43. Ms. Buros's membership in Education Minnesota and its affiliates therefore ceased on August 3, 2018.

44. Even though Ms. Buros had quit the union, the union *continued* to take membership dues from her paycheck of September 14, 2018.

45. On September 17, 2018, Ms. Buros e-mailed Mr. Greeley at the school district's payroll office to ask why the school district was continuing to divert her paycheck to a union that she does not belong to and does not support. *See* Exhibit 3.

46. Mr. Greeley wrote back:

> Dues were taken out as teachers can only opt-out during the window of 9/24-9/30, with dues to stop on 10/12/18. You'll have to notify Dale Anderson during this time frame.

*See* Exhibit 3.

47. On September 18, 2018, Dale Anderson e-mailed Ms. Buros and explained that the union would continue to take membership dues from her paycheck—even though Ms. Buros had canceled her membership in August—because teachers who quit the union must continue to pay dues unless and until they affirmatively opt out

during a seven-day window that runs from September 24 and September 30. *See* Exhibit 4. Mr. Anderson claimed that Ms. Buros's union-membership contract contained the following language:

> I agree to submit dues to Education Minnesota and hereby request and voluntarily authorize my employer to deduct from my wages an amount equal to the regular monthly dues uniformly applicable to members of Education Minnesota or monthly service fee, and further that such amount so deducted be sent to such local union for and on my behalf. This authorization shall remain in effect and shall be automatically renewed from year to year, irrespective of my membership in the union, unless I revoke it by submitting written notice to both my employer and the local union during the seven-day period that begins on September 24 and ends on September 30. Such revocation will take effect on October 1 in the year in which I submit the revocation.

*See* Exhibit 4.

48. The union's continued garnishment of Ms. Buros's wages after she resigned her union membership violates the Speech Clause and the Supreme Court's ruling in *Janus*. *Janus* holds that public-employee unions are forbidden to touch a nonmember's paycheck unless the employee "clearly and affirmatively consent[s] before any money is taken." *Janus*, 138 S. Ct. at 2486; *see also id.* ("Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay."). Ms. Buros ceased to be a member of Education Minnesota and its affiliates when she e-mailed her resignation to Dale Anderson on August 3, 2018. Now that Ms. Buros has quit the union, the union is forbidden to take her money unless it secures Ms. Buros's clear, affirmative, and freely given consent in advance.

49. Education Minnesota and the Shakopee Education Association have committed the torts of conversion and trespass to chattels by taking and redirecting money from Ms. Buros's paycheck without securing her clear, affirmative, and freely given

consent—and they are continuing to commit those torts by taking union membership dues from Ms. Buros against her wishes.

50. Any "maintenance of dues" agreement that compels public employees to continue paying membership dues after they quit the union—and that forbids them to withdraw their financial support unless they affirmatively "opt out" during a seven-day window that comes around once per year—is unenforceable and void. A public employee has the constitutional right to revoke his or her union membership at any time. And once an employee terminates his membership, the payroll deduction of union dues must cease immediately. *See Janus*, 138 S. Ct. at 2486 ("Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay."). The burden is on the union to secure the non-member's clear and affirmative consent to pay; the union cannot place the burden on a non-member employee to affirmatively opt out of union payments.

51. Ms. Buros did not waive her First Amendment rights by signing a "maintenance of dues" agreement as part of her union-membership contract. Any public employee who signed a union-membership contract while working in an agency shop was unconstitutionally coerced and did not provide a legally valid waiver of his First Amendment rights. An employee who agreed to join the union pre-*Janus* was *compelled* to pay at least the amount of "fair-share fees" to the union regardless of whether he joined, and any agreement to pay membership dues under these circumstances is tainted by the unconstitutional agency-shop arrangement. A person who is told, "Sign this contract or else I will start taking $500 per year from your paycheck," and then signs the contract in response to this "offer," has not provided a legally valid waiver of his *Janus* rights. *See Janus*, 138 S. Ct. at 2486 (waivers of First Amendment rights must be "freely given").

52. In addition, any pre-*Janus* public employee who signed a "maintenance of dues" agreement consented to pay only the *difference* between full membership dues and the compulsory "fair-share fees" that would have been imposed had they resigned. A pre-*Janus* employee who agreed to pay that marginal difference until the next annual "opt-out" window has not promised to pay full membership dues to the union in a post-*Janus*, right-to-work situation.

53. *Janus* also holds that waivers of First Amendment rights cannot be presumed, and must be "freely given and shown by 'clear and compelling' evidence." *Janus*, 138 S. Ct. at 2486 (citation omitted). A pre-*Janus* union-membership contract cannot effectuate a "freely given" waiver of an employee's *Janus* rights, because any employee who declined union membership in an agency shop would have been subject to an unconstitutional financial penalty. In addition, employees at the time were not even aware of their constitutional right to withhold payments from the union, as *Janus* had not yet been decided. *See Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."); *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938) ("A waiver is ordinarily an intentional relinquishment or abandonment of a *known* right or privilege." (emphasis added)). So the union must honor Ms. Buros's assertion of her *Janus* rights—and it cannot invoke pre-*Janus* "maintenance of dues" contracts as a waiver of her constitutional right to withhold financial support from the union after resigning her membership.

54. Finally, a public-employee union cannot condition union membership on a waiver of an employee's constitutional rights under *Janus*. The union has been granted a monopoly power by the State, and it is the *only* entity that public employees may use as their bargaining representative. *See* Minn. Stat. § 179A.06(2) ("Public

employees in an appropriate unit have the right by secret ballot to designate an *exclusive* representative to negotiate grievance procedures and the terms and conditions of employment with their employer." (emphasis added)). An employee has no ability to shop around for the best membership deal, and there is no market competition or the possibility of new entrants to serve as a check against onerous or unreasonable terms of membership. If the unions can enforce "maintenance of dues" agreements that compel employees to continue paying membership dues after they quit the union—unless they remember to affirmatively "opt out" during a seven-day window that comes up once per year—then there is nothing to stop the union from establishing a seven-minute opt-out window, or an opt-out window that becomes available once per decade. Indeed, there is nothing to stop the union from creating membership contracts that require members to pay dues for as long as they remain public employees—regardless of whether they resign their union membership.

55. Ms. Buros is suing on behalf of all current and former members of Education Minnesota and its affiliates who: (1) attempted to resign their union membership at any time before or after *Janus*; and (2) had union membership dues taken from their paychecks after communicating their desire to resign. The class includes anyone who has ever fallen within this definition, including former and retired public employees, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

56. Ms. Buros has Article III standing to bring these claims. She has suffered injury in fact because the union and her employer have taken money from her paycheck after she informed them that she had resigned her union membership. These injuries are caused by the unlawful behavior of the defendants, and the injury will be redressed by a refund of money that the union unlawfully took from Ms. Buros and her fellow class members, as well as an injunction that bars the collection of membership dues from any employee who has communicated their desire to resign.

## CAUSES OF ACTION

57. The representative plaintiffs are suing the defendants under 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, each of which supplies a cause of action for the individual and class-wide relief that they are requesting.

58. The representative plaintiffs are also suing the defendants under the state-law torts of conversion, trespass to chattels, replevin, and any other state-law cause of action that offers relief for this unlawful seizure of their personal property. The representative plaintiffs invoke the supplemental jurisdiction of this court over these pendent state-law claims. *See* 28 U.S.C. § 1367.

## DEMAND FOR RELIEF—FAIR-SHARE FEE PAYERS

59. Ms. Hoekman, Ms. Aune, Mr. Hanson, and Ms. Workman respectfully request that the court:

    a. certify a plaintiff class of all nonunion members who have been forced to pay "fair-share fees" to Education Minnesota or its affiliates as a condition of their employment;

    b. certify a defendant class of Education Minnesota chapters and affiliates;

    c. declare that Ms. Hoekman, Ms. Aune, Mr. Hanson, Ms. Workman, and their fellow class members have a constitutional right to decline to join or financially support a public-employee union, and that they cannot be forced to pay money to a public-employee union as a condition of their employment;

    d. declare that state tort law protects the right of Ms. Hoekman, Ms. Aune, Mr. Hanson, Ms. Workman, and their fellow class members not to have their wages garnished or redirected by Education Minnesota or its affiliates without their affirmative, written, and freely given consent, and that any federal or state law or collective-bargaining

    agreement that purports to override these protections of state tort law by allowing Education Minnesota to help itself to the wages and paychecks of school employees—or that compels school employees to consent the garnishment of their wages by Education Minnesota as a condition of their employment—is unconstitutional and without legal effect;

e. declare Minn. Stat. § 179A.06(3) unconstitutional because it allows public-employee unions to extract "fair-share fees" from nonmembers as a condition of their employment, and permanently enjoin the defendants, and all of their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing Minn. Stat. § 179A.06(3), or any other provision of state law that authorizes or enforces public-employee union shops;

f. declare that all collective-bargaining agreements that compel the representative plaintiffs and their fellow class members to pay "fair-share fees" to Education Minnesota or its affiliates as a condition of their employment violate the constitutional rights of Ms. Hoekman, Ms. Aune, Mr. Hanson, Ms. Workman, and their fellow class members;

g. order Education Minnesota and its affiliates, including the NEA and the AFT, to refund all "fair-share fees" that they unconstitutionally extracted from Ms. Hoekman, Ms. Aune, Mr. Hanson, Ms. Workman, and their fellow fair-share fee payers;

h. award costs and attorneys' fees under 42 U.S.C. § 1988;

i. grant all other relief that the Court may deem just, proper, or equitable.

## DEMAND FOR RELIEF—UNWILLING UNION MEMBERS

60.  Mr. Benner, Ms. Buros, Mr. Severance, Mr. Unseth, and Ms. York respectfully request that the court:

    a.    certify a plaintiff class of all members or former members of Education Minnesota or its affiliates who would have quit the union had they not been forced to work in an unconstitutional agency shop;

    b.    certify a defendant class of Education Minnesota chapters and affiliates;

    c.    declare that Mr. Benner, Ms. Buros, Mr. Severance, Mr. Unseth, Ms. York, and their fellow class members have a constitutional right to decline to join or financially support a public-employee union, and that they cannot be forced to pay money to a public-employee union as a condition of their employment;

    d.    declare that state tort law protects the right of Mr. Benner, Ms. Buros, Mr. Severance, Mr. Unseth, Ms. York, and their fellow class members not to have their wages garnished or redirected by Education Minnesota or its affiliates without their affirmative, written, and freely given consent, and that any federal or state law or collective-bargaining agreement that purports to override these protections of state tort law by allowing Education Minnesota to help itself to the wages and paychecks of school employees—or that compels school employees to consent the garnishment of their wages by Education Minnesota as a condition of their employment—is unconstitutional and without legal effect;

    e.    order Education Minnesota and its affiliates to provide a refund to every class member in an amount equal to the "fair-share fees" that

       the class members were forced to pay regardless of whether they retained or resigned their union membership;

   f.   permanently enjoin all of the defendants, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing any provision of Minnesota law, or any provision of a collective-bargaining agreement, that requires any payment of money as a consequence for exercising one's constitutional right not to join or financially support a public-employee union;

   g.   award costs and attorneys' fees under 42 U.S.C. § 1988;

   h.   grant all other relief that the Court may deem just, proper, or equitable.

### DEMAND FOR RELIEF—UNCONSTITUTIONAL GARNISHMENT OF WAGES POST-*JANUS*

61.   Ms. Buros respectfully requests that the court:

   a.   certify a plaintiff class of all current and former members of Education Minnesota and its affiliates who had union membership dues taken from their paychecks after communicating their desire to quit the union;

   b.   certify a defendant class of Education Minnesota chapters and affiliates;

   c.   declare that Education Minnesota and the Shakopee Education Association violated Ms. Buros's constitutional rights by taking union membership dues from her paycheck after she had resigned her union membership;

   d.   declare that Education Minnesota and the Shakopee Education Association violated state tort law by garnishing and redirecting the wages

of Ms. Buros and her fellow class members without first obtaining their clear and affirmative consent;

e. declare that all provisions in collective-bargaining agreements negotiated by Education Minnesota and its affiliates that compel a public employer to deduct union-related fees from an employee's paycheck upon the union's request and without regard to whether the employee has "clearly and affirmatively consented" to these payroll deductions are unconstitutional, void, and without legal effect;

f. declare that Education Minnesota's "maintenance of dues" agreements—which compel public employees to continue paying membership dues after they quit the union, and forbid them to withdraw their financial support unless they affirmatively "opt out" during a seven-day window that comes around once per year—are unenforceable and void;

g. declare that a public employee has a constitutional right to revoke his or her union membership at any time, and that once an employee terminates his membership the payroll deduction of union dues must cease;

h. order Education Minnesota and its affiliates, included the NEA and AFT, to refund all union-related fees that they took or re-directed from class members who had previously announced their resignation from the union;

i. order Education Minnesota and its affiliates to immediately honor and enforce an employee's decision to resign from the union and withdraw his or her financial support, regardless of the time of year that the decision is made and regardless of any previous agreement that

purports to limit the employee's ability to halt the payment of union-related fees;

j. permanently enjoin Education Minnesota and its affiliates, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from taking or redirecting any type of money from any public employee who has not given his affirmative, written, and freely given consent post-*Janus* to these union-related payments;

k. award costs and attorneys' fees under 42 U.S.C. § 1988;

l. grant all other relief that the Court may deem just, proper, or equitable.

        Respectfully submitted.

        /s/ Douglas P. Seaton

| | |
|---|---|
| JONATHAN F. MITCHELL* | DOUGLAS P. SEATON |
| TX Bar No. 24075463 | MN Bar No. 127759 |
| Mitchell Law PLLC | Seaton, Peters & Revnew, P.A. |
| 106 East Sixth Street, Suite 900 | 7300 Metro Boulevard, Suite 500 |
| Austin, Texas 78701 | Minneapolis, Minnesota 55439 |
| (512) 686-3940 | (952) 921-4604 |
| jonathan@mitchell.law | dseaton@seatonlaw.com |

\* admitted *pro hac vice*

Dated: October 1, 2018

*Counsel for Plaintiffs and the Proposed Class*